IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| UNITED STATES, | ) |
| --- | --- |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:10cr236 |
| | ) |
| AMJAL A. AMAN, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

At issue on defendant's motion to dismiss is whether application of the federal arson statute, 18 U.S.C. § 844(i), to the burning of a restaurant, bar, and pool hall facility is a constitutional exercise of Congress's authority under the Commerce Clause. For the reasons that follow, defendant's motion to dismiss the indictment must be denied.

I.

On July 7, 2010, a federal grand jury indicted Amjal A. Aman with arson, in violation of 18 U.S.C. § 844(i).[1] The one-paragraph indictment alleges that Aman "maliciously damaged and destroyed, by means of fire, the building known as Bridges Billiards & Grill, located at 10560 Main Street, Fairfax, Virginia." Indictment ¶ 1. The alleged act occurred on November 1, 2009.

Bridges Billiards & Grill ("Bridges") is a for-profit, commercial establishment that includes a restaurant, bar, pool tables, and dance floor. It occupies the ground floor of Mosby Towers, a seven-story commercial office building located in Fairfax, Virginia. Bridges has only

---

[1] The text of § 844(i) provides:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both . . . .

- 1 -

one location and is not part of a chain. The restaurant caters primarily to local college students, but it also serves out-of-state customers. Furthermore, the restaurant has been owned by out-of-state investors. Specifically, the restaurant was purchased and financed in-part by Bill Aughavin, a New York resident who retained a 10% ownership interest and was paid dividends.

Bridges does significant business with companies located outside of Virginia. Soon after its opening, Bridges began purchasing its food supplies, paper products, and non-alcoholic beverages from Sysco Baltimore, a company located in Jessup, Maryland.[2] In 2007, Bridges contracted with Hospitality Publishers, a Tennessee-based publishing firm, to make advertisements to be placed at the Hampton Inn in Fairfax, which caters to out-of-town visitors. In 2009, Bridges ordered custom-embroidered clothing from Southern Advertising, a South Carolina-based company. In 2009, Bridges also contracted with Eric Entertainment LLC, a Virginia-based company, to import a PokerTek gaming system from North Carolina for use by Bridges's customers. Finally, while Bridges is required by statute to purchase alcohol from Virginia distributors, the alcohol it sells is manufactured in other states and foreign countries.[3]

On August 23, 2010, Aman filed a motion to dismiss the indictment, arguing that § 844(i) is unconstitutional as applied for two reasons. First, Aman contends that Congress may only regulate economic activity that substantially affects interstate commerce, and damaging a bar by means of fire is not economic activity. Second, Aman argues that burning Bridges, a local bar that caters to college students, does not have a substantial effect on interstate commerce.

---

[2] For example, on October 28, 2009, Sysco Baltimore delivered $1,047.50 worth of goods and supplies, including cheese, bacon, chicken, potatoes, ketchup, water, napkins, cleaning supplies, and lettuce.

[3] Among the many brands of alcohol available at Bridges included Absolut Vodka (Sweden), Bacardi (Puerto Rico), and Jack Daniel's (Tennessee).

## II.

The question presented here is whether application of the federal arson statute, § 844(i), to a large commercial establishment that includes a restaurant, bar, pool tables, and dance floor exceeds Congress's Commerce Clause power. Not surprisingly, the question of § 844(i)'s constitutionality, facial and as-applied, is no stranger to federal court litigation. A number of cases have upheld its facial constitutionality[4] while others have reached varying conclusions on as-applied challenges.[5] The starting point in the analysis of this as-applied challenge is *Jones v. United States*, 529 U.S. 848 (2000), where the Supreme Court held that the jurisdictional element of § 844(i), which requires that a building be "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce," does not encompass an owner-occupied residence that is not actively used for any commercial purpose.[6] Although factually quite distinct, *Jones* is nonetheless pertinent here because the Supreme Court there explained that the

---

[4] *See United States v. Morrison*, 218 F.App'x 933, 942 n.11 (11th Cir. 2007); *United States v. Gaydos*, 108 F.3d 505, 508-09 (3d Cir. 1997); *United States v. Corona*, 108 F.3d 565, 570 (5th Cir. 1997); *United States v. DiSanto*, 86 F.3d 1238, 1245 (1st Cir. 1996); *United States v. McMasters*, 90 F.3d 1394, 1398-99 (8th Cir. 1996).

[5] The following cases have found that § 844(i) is constitutional as-applied. *See United States v. Iodice*, 525 F.3d 179, 185 (2d Cir. 2008) (vacant diner); *Morrison*, 218 F.App'x at 942 n.11 (commercial bar and restaurant); *United States v. Logan*, 419 F.3d 172, 179-180 (2d Cir. 2005) (rented fraternity house); *United States v. Jimenez*, 256 F.3d 330, 339 (5th Cir. 2001) (private residence with home office); *United States v. Dascenzo*, 152 F.3d 1300, 1303 (11th Cir. 1998) (rented home); *United States v. Grimes*, 142 F.3d 1342, 1346-47 (2d Cir. 1998) (apartment building). In contrast, the following cases have granted as-applied challenges by holding that a particular building's interstate commerce connections did not satisfy the jurisdictional element of § 844(i). *See United States v. Lamont*, 330 F.3d 1249, 1251-57 (9th Cir. 2003) (church); *United States v. Odom*, 252 F.3d 1289, 1293-97 (11th Cir. 2001) (church).

[6] In *Jones*, the residence's only links to interstate commerce were that: (i) it was used as collateral for a mortgage from an out-of-state lender; (ii) it was used to obtain casualty insurance from an out-of-state insurer; and (iii) it received natural gas from out-of-state sources. *Jones*, 529 U.S. at 855.

scope of the jurisdictional element of § 844(i), which ensures its facial constitutionality,[7] does not extend to the full reach of Congress's power under the Commerce Clause. *Id.* at 855. In other words, § 844(i)'s jurisdictional element stops short of fully exercising Congress's Commerce Clause power. It follows that if the facts adduced here meet the jurisdictional element of § 844(i), then, *a fortiori*, these facts also satisfy the Commerce Clause.[8]

*Jones* also offers guidance in determining whether 844(i) reaches a particular building damaged by arson. First, courts must inquire "into the function of the building itself." *Id.* at 854-56. Second, courts must determine "whether that function affects interstate commerce." *Id.* This second step requires "active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." *United States v. Terry*, 257 F.3d 366, 370 (4th Cir. 2001) (quoting *Jones*, 592 U.S. at 855).

Here, the evidence proffered by the government in its opposition to the motion to dismiss is sufficient to establish that the operations carried on at Bridges fall squarely within the jurisdictional element of § 844(i). To begin with, the function of the building was to operate as a for-profit, commercial establishment that included a restaurant, bar, pool tables, and dance floor. There is little doubt that this function substantially affects interstate commerce by catering to

---

[7] *See United States v. Lopez*, 514 U.S. 549, 561-62 (1995).

[8] Other courts have resolved as-applied constitutional challenges to § 844(i) by evaluating whether the statute's jurisdictional element has been met. *See Morrison*, 218 F.App'x at 942 n.11 ("The statute is constitutional as applied to Morrison because the government proved that the interstate commerce nexus was satisfied under the standards established in . . . cases construing § 844(i)."); *Logan*, 419 F.3d at 179-81 (holding that the application of § 844(i) to a rented fraternity house was constitutional because Supreme Court precedent establishes that a rented dwelling falls within the scope of the jurisdictional element of § 844(i)); *United States v. Grassie*, 237 F.3d 1199, 1211 (10th Cir. 2001) ("To that discussion we add that by making interstate commerce an element of the crime under . . . § 844(i), to be decided on a case-by-case basis, constitutional problems are avoided"); *Grimes*, 142 F.3d at 1346-47 (holding that statute was constitutional as-applied because the apartment building satisfied the interstate commerce nexus of § 844(i)).

out-of-state customers, receiving supplies from a company located in Maryland, and purchasing advertisements and clothing from companies in Tennessee and South Carolina. Also pertinent in this respect is that one of Bridges's owners was a New York resident. Finally, the bar sold premium liquor that was manufactured outside of Virginia. Taken together, these interstate connections satisfy the jurisdictional element of § 844(i),[9] and because the jurisdictional element is narrower in scope than Congress's Commerce Clause power, these connections also satisfy the requirements of the Commerce Clause.

The same result is reached by conducting an alternate analysis that does not rely on cases construing § 844(i)'s jurisdictional element. The Constitution delegates to Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Art. I, § 8, cl. 3. It is well-settled that Congress may regulate three broad categories of activity under its commerce power. First, Congress may regulate the channels of interstate commerce. *See Gonzales v. Raich*, 545 U.S. 1, 16 (2005). Second, Congress has the authority to regulate and protect the instrumentalities of interstate commerce, and persons or things in interstate commerce. *Id.* at 16-17. Third, Congress has the power to regulate activities that substantially affect interstate commerce. *Id.* at 17. In this case, both the government and Aman agree that § 844(i) is a category three regulation.

Aman argues that 844(i) is unconstitutional as applied to Bridges because setting fire to a building is not commercial activity. This argument fails because it focuses too narrowly on the act of arson and ignores the function and purpose of the building that is the object of the arson. As such, this argument appears to be a facial challenge to the constitutionality of § 844(i). Were

---

[9] Indeed, other defendants have been successfully prosecuted under § 844(i) for burning buildings with less significant ties to interstate commerce. *See Russell v. United States*, 471 U.S. 858, 862 (1985) (two-unit apartment building); *Iodice*, 525 F.3d at 183 (vacant diner); *Terry*, 257 F.3d at 368 (local daycare center).

the statute to be unconstitutional as-applied because arson is not commercial activity, the statute could never pass constitutional muster; in every § 844(i) prosecution, the primary prohibited conduct is arson. Indeed, it is difficult to reconcile Aman's argument with the correct concession in his reply brief that § 844(i) could be constitutionally applied to the burning of a local train station. In any event, multiple circuit courts have concluded that § 844(i) is constitutional on its face because the statute contains a jurisdictional element that ensures that the object of the arson has the requisite connection to interstate commerce.[10]

Aman also argues that § 844(i) is unconstitutional as applied because the burning of Bridges does not substantially affect interstate commerce. This argument is equally unavailing because the evidence proffered by the government not only satisfies the jurisdictional element of the statute, it also establishes that Bridges has a substantial effect on interstate commerce.[11] *Id.* Specifically, the following facts are sufficient to make application of the federal arson statute constitutional as-applied in this case: (i) Bridges was a for-profit, commercial establishment that included a restaurant, bar, pool tables, and dance floor; (ii) Bridges was located on the ground floor of a seven-story commercial building in downtown Fairfax, Virginia; (iii) Bridges served customers from outside of Virginia; (iv) Bridges was partially owned by an out-of-state investor; (v) Bridges received food, cleaning supplies, and non-alcoholic beverages from an out-of-state

---

[10] *See supra* p.3 n.4.

[11] Even assuming that Bridges's effect on interstate commerce is less than substantial, § 844(i) may nonetheless by constitutional as-applied to Bridges. It is well-settled that if Congress has the power to regulate a "class of activities," it may regulate individual activity within that class. *Raich*, 545 U.S. at 17; *Russell*, 471 U.S. at 862. Thus, even if Bridges were to have an insubstantial effect on interstate commerce, applying the arson statute to Bridges does not necessarily run afoul of the Commerce Clause because Congress undoubtedly has the power to regulate the commercial market for food and drink delivery, and Bridges's operations are an element of that market. *See United States v. Joyner*, 102 F.3d 61, 78 (2d Cir. 2000). In the end, it is unnecessary to reach or decide whether this aggregation theory applies here because Bridges's operations themselves have a substantial effect on interstate commerce.

supplier; (vi) Bridges contracted with out-of-state companies for advertising and clothing; (vii) Bridges had a poker machine manufactured by an out-of-state company; and (viii) Bridges sold liquor manufactured in other states. Indeed, Bridges's effect on interstate commerce was as at least as substantial as other buildings that have withstood as-applied challenges.[12]

It is important to note that the Memorandum Opinion and accompanying order does not obviate the necessity for the government to present evidence and to prove beyond a reasonable doubt the jurisdictional element of § 844(i); namely, that Bridges was "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." See *United States v. Latouf*, 132 F.3d 320, 325 (6th Cir. 1997) (collecting cases).

An appropriate Order will issue.

Alexandria, Virginia
October 18, 2010

/s/
T. S. Ellis, III
United States District Judge

---

[12] See *supra* p.3 n.5.