IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:10CR236 |
| | ) | |
| AJMAL A. AMAN, | ) | Hon. T.S. Ellis, III |
| | ) | |
| Defendant. | ) | Sentencing: January 21, 2011 |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

In accord with 18 U.S.C. § 3553(a), the United States Sentencing Guidelines Manual ("Guidelines") § 6A1.2, and the mandatory penalty imposed by Title 18, U.S.C. § 844(i), the United States of America, by and through undersigned counsel, submits the following Position with Respect to Sentencing of AJMAL A. AMAN ("Defendant"). The Guidelines are properly calculated and provide an advisory Guidelines range of 41-51 months imprisonment. As the Court is aware, the offense for which Defendant was tried and convicted, Title 18, U.S.C. § 844(i), imposes upon Defendant a mandatory minimum sentence of sixty (60) months of imprisonment. The United States maintains that a sentence of sixty (60) months is sufficient, but not greater than necessary, to address the sentencing factors set forth in Title 18, U.S.C. § 3553.

**I. Applicable Sentencing Law**

Even though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 125 S. Ct. 738, 767 (2005). "[A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the Guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the Guidelines and

1

those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553 states that the court should consider the nature and circumstances of the offense and characteristics of the defendant. In addition, it states that the court must consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B).

The sentence imposed must meet a standard of reasonableness, *see Booker*, 125 S. Ct. at 765, and as the Fourth Circuit has stated, "reasonableness is not measured simply by whether the sentence falls within the statutory range, but by whether the sentence was guided by the Sentencing Guidelines and by the provisions of § 3553(a)." *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006). As explained in *Gall v. United States*, 552 U.S. 38, 49-50 (2007), a district court's sentencing duties are as follows:

> As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.[] In so doing, he may not presume that the Guidelines range is reasonable. See [*Rita v. United States*]*,* at ----, 127 S.Ct. 2456. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. *Id.,* at 127 S.Ct. 2456.

## II. Sentencing Guidelines & 3553 Factors

### A. Guideline Calculations

The United States has reviewed the presentence report prepared in this matter, and does not dispute any of the facts set out therein.[1] While the sixty month (60) statutory mandatory minimum exceeds, and thus supercedes, the advisory guidelines range, the Government, nonetheless, believes the guidelines are properly calculated. The base offense level is properly calculated at a level twenty (20). As the trial testimony and exhibits revealed, Defendant committed the arson in part to conceal his embezzlement of company revenue; therefore, a two point enhancement pursuant to Guidelines § 2K1.4(b)(1) was properly assessed.

The Government put forth ample relevant and admissible evidence linking Defendant's motivation for the arson to his embezzlement of company funds. First, the United States submitted to the jury a series of text messages between Defendant and co-owner David Black that referenced their stealing of company revenue and their concern about getting caught by another owner who Defendant thought suspected him of stealing. Defendant engaged in this concerned dialogue via text message less than one week before the fire. In addition, Bridges co-owner David Black testified that he witnessed Defendant steal money for a personal trip to Las Vegas. Black further testified that Defendant and Black had expressly discussed their stealing of company money, concern about getting caught, and the possibility of destroying the office

---

[1] The presentence report states in paragraph twenty-one (21) that the fire "caused an estimated "$75,000 in damages to Bridges." The Government believes that this estimate falls far below the actual loss amount and, at the time of this filing, the Government was informed that additional loss documentation was submitted to Senior Probation Officer Coopwood that details a much greater loss amount. Consequently, at this time, the Government objects to the presentence report's current loss amount, but it is anticipated that this issue will be resolved prior to sentencing.

Case 1:10-cr-00236-TSE Document 120 Filed 01/14/11 Page 4 of 9 PageID# 2470


computer to cover any potential trace of their embezzlement. Third, the Government adduced evidence at trial that immediately after the fire two large sums of cash, which roughly equaled the company's door revenue for the evening, were found hidden in Defendant's vehicle and in Defendant's boot respectively. Black's eyewitness testimony regarding he and Defendant's embezzlement was corroborated by the aforementioned evidence. Further, as the admissible evidence detailed, Defendant specifically intended to burn Bridges' office, which was the main repository for all of the business' financial records, both electronic and paper.

In fact, Defendant successfully destroyed multiple binders and a computer that served as the accounting records for the business. For purposes of the sentencing enhancement, the Government proved by a preponderance of the evidence that Defendant's arson was done in part to cover up his criminal act of embezzlement.

Therefore, Defendant's adjusted offense level of 22, when combined with his criminal history category I, yields a proper advisory Guidelines range of 41-51 months of imprisonment. In light of the statutory, mandatory minimum, this Guidelines calculation becomes somewhat academic, and for the reasons articulated below, the United States requests a sentence of sixty (60) months of imprisonment.

**B. 18 U.S.C. § 3553(a) Factors**

**1. A Sentence of 60 months is Reasonable and Appropriate Given the Nature, Circumstances, and Seriousness of the Offense**

As determined by twelve of Defendant's peers, in the early morning hours of November 1, 2009, Defendant intentionally set fire to Bridges, Billiards, and Grill, which was located at 10560 Main Street, Suite 100, Fairfax, Virginia. Fire investigators determined that Defendant lit

multiple fires inside of Bridges; one of which was started in the office portion of the establishment. The office fire, which consumed almost the entire electronic and paper contents of the office, filled the entire business with smoke. The smoke, fed by gasoline, lighter fluid, and the burning of plastics, was so thick that it required the responding rescue personnel to use self contained breathing apparatuses. Further, when the fire department actually located the one remaining active fire, the fire was burning intensely and pulsating. This fire, given its size and intensity, was a threat to all rescue personnel who entered Bridges as well as to all the businesses located on the floors above Bridges. In addition to the public safety hazards created by Defendant's actions, his nefarious conduct had a great economic impact on multiple individuals.

Defendant's selfish and cowardly act of burning Bridges, done in part to avoid responsibility for his stealing of company money, greatly harmed his five partners. Carlos Reyes, David Black, Kian Nosrat, Kamran "Viktor" Nosrat, and William Aughavin all had monetary and/or "sweat equity" invested into Bridges. Further, Bridges' insurance policy did not cover destruction caused by the criminal acts of any owner. Defendant destroyed these five co-owners' business and put the company in such financial distress that the business was not able to rebuild or pay all of its debts. The business and its partnership is also now vulnerable to civil lawsuits from creditors and its landlord. William Aughavin, specifically, lost the entirety of his $100,000 investment. David Black lost his only source of income. In addition to the five co-owners, approximately eighteen bar employees lost their jobs during one of the worst recessions in our nation's history. The Mosby Towers Office Building, which leased its space to Bridges, was forced to salvage, clean, and renovate the area Bridges previously occupied at great cost. To add insult to injury, the Bridge's space, which leased for approximately $19,000 per month, remained vacant for over a year.

In short, Defendant's offense not only created a serious public safety hazard, but also had dire consequences for those that entrusted their money, business, and livelihood to Defendant's judgment and responsibility.

### 2. History and Characteristics of the Defendant

Defendant in many ways embodies the proverbial American Dream. As the presentence report reflects, his family fled to America to escape violence and possible persecution and established a new life for Defendant and his siblings in Northern Virginia. Defendant had the benefit of one of the best secondary public education systems in country and then obtained admission to George Mason University. Next, Defendant, through the financial backing and support of his immediate family, was able to purchase an established restaurant and bar business. Despite all of this good fortune and opportunity, Defendant squandered everything and destroyed his own business. After engaging in this conduct, Defendant, when confronted first by law enforcement, lied and provided false information and now fails to accept responsibility for his actions.

Defendant's history and characteristics prior to the arson are extremely positive, which are reflected in his criminal history category I calculation. Numerically, his positive history and lack of a criminal record cannot be held against Defendant, but just as guilty individuals often make justifications for their criminal behavior based upon unfortunate and dire life circumstances, it should be noted that Defendant lacked these motives and was not without countless other legal and responsible choices instead of setting fire to Bridges. Therefore, despite his lack of a criminal record, a term of sixty (60) months of imprisonment is appropriate.

### 3. A Sentence of 60 Months Will Protect the Public, Provide Appropriate and Reasonable Deterrence, and Promote Respect for the Law.

A sentence of 60 months of imprisonment is sufficient to protect the public, provide appropriate and reasonable deterrence, and to promote respect for the law. 18 U.S.C. § 3553(a)(2)(A), (B), (C). The government submits that general, rather than specific deterrence is needed in this case. The government is hopeful that after serving the statutorily required months of incarceration that Defendant will once again become a law abiding and productive member of society. Of greater concern, especially during these extremely difficult economic times, is that other business owners will also attempt to avoid responsibility and intentionally burn their establishments. A sentence containing a significant period of incarceration, however, will deter other individuals, especially Northern Virginia business owners, from engaging in the intentional destruction of their businesses. Further, this Court can continue to protect the public by sentencing Defendant to a term of sixty (60) months in prison, which will allow Defendant ample opportunity to contemplate his priorities, gain maturity, and consider the impact of his decision to commit a crime. A sentence of sixty (60) months will also promote respect for laws surrounding arson and impress upon home and business owners the importance of being honest and responsible even when faced with difficult financial circumstances.

### 4. Kinds of Sentences Available

Even though Defendant is now, and has been, unemployed and is subject to a substantial restitution judgment, he still has an approximate net worth of $102,927.00 and is consequently able pay a financial penalty. Defendant's conduct caused great financial harm and it would be inequitable to not assess a similar economic penalty on Defendant, the lack of which would leave

7

him in a better financial situation than his victims. Thus, as contemplated by the §3553(a) factors, the United States requests that the Court also impose a financial penalty against Defendant and defers to the Court on the amount of such a fine.

### III.    Conclusion

For the reasons stated and pursuant to the §3553(a) factors, the United States respectfully requests that the Court impose the mandatory minimum period of sixty (60) months imprisonment, a financial penalty to be determined by the Court, and an order of restitution pursuant to Title 18, U.S.C. § 3663A.

Respectfully Submitted,
Neil H. MacBride
United States Attorney

By:      /s/
G. Zachary Terwilliger
Timothy D. Belevetz
Assistant United States Attorneys
Attorney for the United States
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22301
Tel: (703) 299-3700
Fax: (703) 299-3982

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the January 14, 2011, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send an electronic copy to:

Christopher Amolsch, Esq.
Counsel for defendant Ajmal A. Aman

By:    /s/
    G. Zachary Terwilliger
    Assistant United States Attorney
    Attorney for the United States
    United States Attorney's Office
    2100 Jamieson Avenue
    Alexandria, Virginia 22301
    Tel: (703) 299-3700
    Fax: (703) 299-3985